UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM BRYAN COTTINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-0580 |
| ) | Judge Echols |
| POLICY STUDIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This is an action brought by Plaintiff relating to Defendant's efforts to collect arrearages in alimony and child support payments owed by Plaintiff. The Magistrate Judge issued a Report and Recommendation ("R & R") (Docket Entry No. 48) in which he recommends dismissal of this action. Plaintiff has filed Objections to the Report and Recommendation (Docket Entry No. 52), to which Defendant has responded in opposition (Docket Entry No. 59).

## I. FACTUAL ALLEGATIONS

The factual allegations contained in Plaintiff's First Amended Complaint (Docket Entry No. 26) are set forth in detail in the R & R. The Court summarizes the relevant allegations to place Plaintiff's Objections in context.

Defendant Policy Studies, Inc. ("PSI"), a for-profit Colorado corporation, entered into contracts with the Tennessee Department of Human Services to provide the State with child support enforcement services. PSI retained Lori Thomas Reid ("Reid"), a Tennessee attorney, to obtain a judgment against Plaintiff for his child support and alimony arrearages. Towards that end, Reid filed

1

several petitions in the Chancery Court for Williamson County Tennessee, the third of which sought judgment for arrearages and criminal contempt sanctions.

After a hearing, the Chancery Court entered a judgment against Plaintiff for an alimony arrearage of $36,000.00, and a child support arrearage of $37,117.69. That court also found Plaintiff in criminal contempt for failing to pay as ordered and sentenced him to a total of 170 days in the county jail. While the monetary judgments were affirmed on appeal, the criminal contempt sanctions were reversed.

Based on these events, Plaintiff filed suit alleging the unauthorized practice of law, abuse of process, malicious prosecution, extortion, and violations of 42 U.S.C. § 1983. The Magistrate Judge recommends dismissal because, inter alia, PSI did not engage in the unauthorized practice of law, PSI is entitled to absolute immunity, and there is no Section 1983 liability against PSI.

## II. STANDARD OF REVIEW

When a party makes timely objections to an R&R, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3).

## III. ANALYSIS OF OBJECTIONS

In the R & R, the Magistrate Judge effectively reached three conclusions: (1) Defendant did not engage in the unauthorized practice of law; (2) the state law claims were subject to dismissal based upon absolute immunity; and (3) Plaintiff did not set forth any allegations that PSI participated

2

in a wrongful act, so as to support a Section 1983 claim. Plaintiff objects to each of these conclusions and the Court will consider the objections in the order presented by Plaintiff.

## A. Absolute Immunity

The Magistrate Judge recommends that Plaintiff's state law claims be dismissed on the basis of absolute immunity because Reid was acting as a prosecutor in pursuing the claims against Plaintiff in the Chancery Court. Plaintiff objects to this conclusion on the grounds that PSI is a for-profit corporation which does not need the protection of absolute immunity, i.e. protection from harassing litigation, intimidation and/or undue distractions when carrying out official duties. Plaintiff also asserts that neither the Defendant nor the Magistrate Judge pointed to any cases which extended prosecutorial immunity to corporations, whereas he has cited to controlling Sixth Circuit authority on the issue.

Absolute prosecutorial immunity applies where a prosecutor's actions are "intimately associated with the judicial phase of the criminal process," Imbler v. Pachtman, 424 U.S. 409, 430 (1976), and "extends to those activities that occur in the prosecutor's role as advocate for the government," such as where a prosecutor subsequently institutes a civil proceeding. Blakely v. United States, 276 F.3d 853, 871 (6th Cir. 2002)(prosecutor's institution of civil forfeiture proceeding). Indeed, as long as the prosecutor[] [was] functioning in an enforcement role and acting as [an] advocate[] for the state in initiating and prosecuting judicial proceedings, [she is] entitled to an absolute immunity defense." Cooper v. Parrish, 203 F.3d 937, 947 (6th Cir. 2000). Such immunity from suit "strikes a balance between compensating those who have been injured by official conduct and protecting the government's ability to perform its traditional functions." Wyatt v. Cole, 504 U.S. 158, 168 (1992).

3

Given the reasons for absolute immunity, such immunity is generally reserved for state actors and not private litigants. Derfiny v. Pontiac Osteopathic Hosp., 106 Fed. Appx. 929, 937 (6th Cir. 2004). However, in appropriate circumstances, absolute immunity extends to private litigants, including "lawyers who perform services at the behest of the sovereign." Richardson v. McKnight, 117 S.Ct. 2100, 2105 (1997).

In this case, the Magistrate Judge found prosecutorial immunity appropriate in light of the contract between PSI and the State and Reid's function in pursuing the recovery of arrearages and contempt sanction. The Magistrate Judge wrote:

> The defendant entered into a contract with the State of Tennessee in which it agreed to "represent the State in each [judicial and each] administrative hearing involving its activities pursuant to the contract pursuant to TCA § 71-3-124 using attorneys licensed in the state of Tennessee, and shall vigorously advocate the interests of the State consistent with the provisions of the Code of Professional Responsibility." Docket Entry No. 39; Exhibit A at pg. 5, ¶ A24; *see also* Docket Entry No. 39; Exhibit B at pg. 2, ¶ A2. The defendant further agreed, as set forth in the contract, to use contempt proceedings when necessary to enforce orders of support. Docket Entry No. 39; Exhibit A at pg. 6, ¶ A26d; *see also* Docket Entry No. 39; Exhibit B at pg. 5, ¶ A.4.d.ii(c). Ms. Reid, then, was acting as an advocate on behalf of the interests of the State of Tennessee when she attempted to recover child support and alimony arrearages from the plaintiff. Toward that end, she apparently engaged in negotiations with the plaintiff that he considered to be coercive in nature. Regardless of how these negotiations are characterized, Ms. Reid was clearly acting as an advocate of the State during both the negotiations and filing of support and contempt petitions. As a consequence, the defendant has absolute immunity from any liability arising from the plaintiff's remaining state law claims.

(Docket Entry No. 48 at 7, footnotes omitted).

The Court finds that the Magistrate Judge conducted the appropriate analysis. While it is true that the actions were taken by a private lawyer, those actions were taken pursuant to PSI's contract with the State, and PSI is protected by absolute immunity. The Supreme Court has made clear that the test for determining if absolute prosecutorial immunity is appropriate turns on "the nature of the

4

function performed, not the identity of the actor who performed it." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). As the United States Court of Appeals for the Fifth Circuit recently explained:

> [The] extension of official immunity to contractors and other private parties is an application of the presumption that "immunity attaches to particular official functions, not to particular offices." We recognize that "[i]f absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors, particularly in light of the government's unquestioned need to delegate governmental functions," and that those functions are "no 'less important simply because they are exercised by officers of lower rank in the executive hierarchy.' "

Houston Community Hosp. v. Blue Cross and Blue Shield of Texas, Inc., 481 F.3d 265, 270 (5th 2007)(footnote and citations omitted).

This case is different from that of Cooper,[1] upon which Plaintiff heavily relies. In that case, which involved the seizure and closure of adult nightclubs, the Sixth Circuit found that while the District Attorney and his Assistant District Attorneys were entitled to absolute immunity, a private attorney who was "informally sworn in as a "Special" Assistant District Attorney was not entitled to such immunity. This was because there was no statutory authority for the Special Assistant's appointment. Further, the Sixth Circuit in Cooper noted that the "Special Assistant" was "not performing any unique government functions" and "was not acting at the behest of the state when he participated in the investigation and pursued legal action against the nightclubs." Id. 203 F.3d at 952.[2]

---

[1] Plaintiff also string-cites Roberts v. Fed. Express Corp., 842 S.W.2d 246, 247 (Tenn. 1992), a Tennessee Supreme Court opinion relating to the issue of probable cause. The Court does not find this decision relevant because the issue of immunity was not even discussed.

[2] The court also observed that while private litigants generally are not entitled to qualified immunity, private attorneys who work pursuant to a government contract are allowed qualified immunity in appropriate circumstances. Id. at 952.

5

Here, in contrast, Tennessee law provides that the Department of Human Services is authorized to enter into contracts with public and private entities for the enforcement of child and spousal support payments. T.C.A. § 71-3-124(c)(2).[3] The events about which Plaintiff presently complains arose as a result of such a contract with PSI.

Plaintiff also relies on Duncan v. Peck, 844 F.2d 1261 (6th Cir. 1988) in which the Sixth Circuit, during a discussion of qualified immunity, stated that private parties were not entitled to immunity under the common law. However, in the subsequent case of Cullinan v. Abramson, 128 F.3d 301 (6th Cir. 1997), the Sixth Circuit held that private attorneys who were acting as the city's agent were entitled to qualified immunity and observed that "the Supreme Court recently had occasion to note that the common law '*did* provide a kind of immunity to certain private defendants, such as doctors or lawyers who performed services at the behest of the sovereign.'" Id. (italics in original)(quoting, Richardson, 117 S.Ct. at 2105).

In this case, the allegations in the First Amended Complaint show that Reid, pursuant to the contracts PSI had with the state, was seeking to enforce prior judgments of the state divorce court relating to Plaintiff's liability for alimony and child support payments.[4] This action is entitled to

---

[3]A State's receipt of certain federal funding is contingent upon its implementing a plan for the collection of child and spousal support. In implementing such a plan, a State is to "have sufficient State staff (consisting of State employees) and (at State option) contractors reporting directly to the State agency[.]" 42 U.S.C. § 644 (27)(B)(I).

[4]Plaintiff also makes a passing argument that PSI through Reid acted outside the scope of the contract and points to certain enforcement language contained in the contracts between the State and PSI. However, the language Plaintiff points to in the 2000 contract states that certain enforcement proceedings are "includ[ed]," (Docket Entry No. 39, Ex. 1 at 6) but does not otherwise bar enforcement proceedings which are otherwise allowed by statute. Similarly, the 2006 contract provides that "the orders to be enforced shall include, but are not limited to[.]" (Docket Entry No. 39, Ex. 2 at 4). In any event, in both contracts, PSI contracted to vigorously pursue support payments in accordance with federal and state law. Thus, it cannot be said that PSI's actions in pursuing

6

prosecutorial immunity. Accordingly, Plaintiff's objection to the Magistrate Judge's conclusion that absolute immunity applies will be overruled.

**B. Unauthorized Practice of Law**

Plaintiff claims that PSI engaged in the unauthorized practice of law. The Magistrate Judge rejected that contention based upon State ex rel. District Atty v. Lytton, 110 S.W. 313, 315 (Tenn. 1937) in which the Tennessee Supreme Court held that a collection agency could contract with creditors and thereafter employ a licensed attorney to collect debts in court proceedings without the collection agency being involved in the unauthorized practice of law. That is, the creditor could employ an agent to assist in the collection of a debt and, by doing so, the creditor authorized the collection agency to do what the creditor could otherwise do, i.e., employ an attorney to represent the client's interest. Likewise in this case, the State could contract with PSI to do what the State would otherwise be entitled to do, i.e. hire attorneys to represent the State's interest in collecting past due support and alimony payments.

The fact that Plaintiff alleges PSI had more involvement in seeking to collect arrearages than the collection agency had in seeking to collect past due accounts in Lytton is largely irrelevant to the issue of the unauthorized practice of law. The critical question is whether an agent (here, PSI) acting pursuant to a contract with a principal (here, the State) engages in the unauthorized practice of law when it retains an attorney to seek monies allegedly owed to the principal. Lytton answers that question in the negative. Moreover, the allegations in the First Amended Complaint concern pleadings filed by, and actions taken by, Reid in the Chancery Court. There is no suggestion that Reid is not a Tennessee lawyer authorized to practice in the Chancery Court. Accordingly,

---

arrearages against Plaintiff were outside the scope of the governing contract or the law.

7

Plaintiff's Objection to the recommended dismissal of his unauthorized practice of law claim will be overruled.

**C. Section 1983 Claims**

The allegations in the First Amended Complaint center on the actions taken by Reid. For this reason, the Magistrate Judge recommends dismissal of Plaintiff's Section 1983 claims because Section 1983 does not allow for respondeat superior liability, Polk v. Dodson, 102 S.Ct. 455 (1981), and there are no allegations of a pattern and practice in the First Amended Complaint so as to support a Section 1983 claim. See, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

Plaintiff does not object to the Magistrate Judge's application of law relating to claims under Section 1983. Instead, he asserts "Plaintiff should have the opportunity to amend the complaint to provide more detail." However, Plaintiff has not filed a Motion to Amend the Complaint, nor has he provided a proposed Amended Complaint for the Court's review.

"Denial of leave to amend may be appropriate when there has been undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Shane v. Bunzl Distrib. USA, Inc., 200 Fed.Appx. 397, 406 (6th Cir 2006)(internal quotation omitted). Leave to amend may also be denied where amendment to a pleading would be futile. Id. The Court finds it improper to allow Plaintiff to amend his complaint again under the facts of this case.

The original Complaint was filed on May 24 2007, and amended on July 31, 2007. Plaintiff did not suggest that he should be allowed to amend his complaint further until he filed objections to the R & R on February 13, 2008. He failed to seek leave to amend his complaint, even though

8

PSI filed a Motion to Dismiss on August 20, 2007 in which it questioned the viability of Plaintiff's Section 1983 claims. In response to that Motion, Plaintiff filed a brief in which he noted that Paratt v. Taylor, 451 U.S. 527, 535 (1981) mandates that in order to establish a Section 1983 claim, plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." (Docket Entry No. 35 at 6). Later in that same brief, Plaintiff asserts that if his Section 1983 claims are not sufficiently pled, then he should be allowed "additional time to correct any deficiency." (Id at 23). Nevertheless, Plaintiff did not seek to amend his complaint at that time.

Further, the Case Management Order provided that all discovery was to be completed by February 15, 2008 (Docket Entry No. 28), and that deadline was extended to February 22, 2008, by later order of the Magistrate Judge (Docket Entry No. 34). However, Plaintiff made no effort to amend his complaint.[5]

Given this chronology of events, the Court will not allow Plaintiff to further amend his Complaint. Simply put, there has been undue and unwarranted delay in seeking amendment and amendment at this time would be prejudicial to PSI. Moreover, in light of this Court's determination on the absolute immunity issue, it would appear that further amendment to the complaint would be futile. See, Alsenas v. City of Brecksville, 221 F.3d 1333, 1334 (6th Cir. 2000)(denial of amendment was appropriate in light of fact that court had determined prosecutor was entitled to absolute immunity).

---

[5] The Court notes that after the Magistrate Judge issued his R & R, the discovery deadlines were extended so that the parties had two weeks after this Court's ruling within which to complete discovery. That Order extending discovery was entered on February 21, 2008. (Docket Entry No. 56). Up until this extension, Plaintiff made no effort to further amend his Complaint, even though the February 22, 2008 deadline for completion of discovery was looming.

9

## D. "Corrections for the Record"

In his objections, Plaintiff includes a subsection titled "Corrections for the Record," in which he identifies purported errors (primarily scrivener errors) allegedly made by the Magistrate Judge in the R & R. For example, Plaintiff asserts that the Magistrate Judge erred in writing that the first petition in Chancery Court was dismissed without prejudice and "shortly thereafter" a second petition was filed. Plaintiff claims this is error since the second petition was filed on the same day as the dismissal of the first petition. Another example is a quotation from the contract in which the Magistrate Judge indicated that PSI agreed to represent the state in "each administrative hearing," when in fact the contract stated that PSI agreed to represent the state in "each judicial and each administrative hearing." (Docket Entry No. 52 at 14).

To the extent that Plaintiff intends his "corrections" to be objections, they are overruled. None of the purported errors has any bearing on the analysis made by the Magistrate Judge, nor does consideration of Plaintiff's "corrections" lead this Court to conclude that the outcome of this case should be different.

## IV. UNRESOLVED MOTIONS

The record contains several motions which have not been ruled upon. This Court's acceptance of the R & R and the decision to dismiss this case renders these motions moot and they will be denied as such. These motions include Plaintiff's (1) Motion to Disqualify Counsel, or in the Alternative, Motion for Sanctions (Docket Entry No. 50) which seeks disqualification of counsel or sanctions on the grounds that the firm representing PSI also represents Reid, as well as his Motion for Leave to File a Reply (Docket Entry No. 57); (2) Motion to Issue Subpoenas (Docket Entry No. 63) to a non-party; and (3) Motion to Strike (Docket Entry No. 42) which asks that Defendant's

reply in support of its Motion to Dismiss be stricken because it is allegedly redundant and contains certain mischaracterizations of Plaintiff's arguments. Additionally, Defendant's Motion for Extension of Time to Complete Discovery (Docket Entry No. 61) will be denied as moot.

In any event, the Court has reviewed these Motions and finds each to be without merit. Moreover, the Motions have no bearing on the question of whether the R &R should be accepted and whether this case should be dismissed.

## V. **CONCLUSION**

Based upon the foregoing, the R & R (Docket Entry No. 48) will be accepted and approved, Plaintiff's Objections thereto (Docket Entry No. 52), will be overruled and Defendant's Motion to Dismiss (Docket Entry No. 29) will be granted. Plaintiff's Motion to Disqualify Counsel, or in the Alternative, Motion for Sanctions (Docket Entry No. 50) and Motion for Leave to File a Reply (Docket Entry No. 57), his Motion to Issue Subpoenas (Docket Entry No. 63), his Motion to Strike (Docket Entry No. 42), and Defendant's Motion for Extension of Time to Complete Discovery (Docket Entry No. 61) will be denied as moot. This case will be dismissed with prejudice.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11